In re Edwin Paul WILSON, Debtor.

John W. GUINEE, Jr.,
Trustee, Plaintiff,

v.

Herald Price FAHRINGER and Marian
S. Rosen, Defendants.

Bankruptcy No. 84–01415–A.
Adv. No. 85–0095–A.

United States Bankruptcy Court,
E.D. Virginia,
Alexandria Division.

Aug. 3, 1987.

John W. Guinne, Jr., Reston, Va., Trustee.

Stephen E. Leach, Washington, D.C., for trustee Zuckerman, Spaeder, Goldstein, Taylor & Kolker.

Mahlon G. Funk, Jr., Hirschler, Fleischer, Weinberg, Cox & Allen, Richmond, Va., for defendants.

## MEMORANDUM OPINION

MARTIN V.B. BOSTETTER, Jr., Chief Judge.

This matter is here for decision on the Trustee's motion for approval of a Stipulation of Facts and Documents entered into by the Trustee and defendants Herald Price Fahringer and Marian S. Rosen. Received in Chambers the day prior to the hearing were two documents affecting the Court's disposition of the motion: a written objection from the debtor, Edwin P. Wilson, and a letter from Greta C. Van Susteren who acts as criminal counsel for Mr. Wilson. Because the Court had not had an adequate opportunity to review these documents, we reserved a ruling on the stipulation.

The facts pertinent to a resolution of this matter are as follows. At the time Wilson filed his petition in bankruptcy, the Circuit Court of Fauquier County had scheduled for sale at auction a number of the debtor's properties, including Bollingbrook, Maxwelton and Elmwood Farms. The parcels were the subject of consolidated partition suits instituted by the debtor's ex-wife, Barbara H. Wilson, before that court, and a public auction stood scheduled for October 2, 1984. On October 1, the Fauquier County count approved a private sale of Bollingbrook Farm, and Wilson filed a petition in bankruptcy in the District of New Jersey which was later transferred to this district. The sale of Bollingbrook Farm, already approved by the Fauquier County court, went to settlement pursuant to an order of this Court dated March 15, 1985 granting Mrs. Wilson relief from the automatic stay to proceed with the sale.

At the time of its sale, Bollingbrook Farm was heavily encumbered. The Travelers Insurance Company held a Deed of Trust as security for a note in the amount of One-million Seven Hundred and Ninety Thousand Dollars ($1,790,000.00) which encumbered Maxwelton and Elmwood Farms as well as Bollingbrook Farm. Further, Wilson had conveyed to the defendants at bar his interest in Bollingbrook Farm in partial satisfaction of the defendants' claims for unpaid legal fees.

The Trustee in Bankruptcy, unable to locate evidence that the defendants were legitimate creditors of the debtor, initiated this adversary proceeding seeking an order enjoining the defendants from receiving any proceeds of the sale of Bollingbrook Farm. A threshold issue affecting the distribution of the proceeds was the defendants' contention that the Travellers' lien should be prorated among the various properties it encumbered. An order mandating that the lien be applied pro rata would substantially reduce the portion of the proceeds due the Travellers, assuring the defendants that their portion of the proceeds would satisfy Wilson's outstanding legal fees. This Court disagreed with the defendants' position, and ruled that the Travellers had the right to full satisfaction of Wilson's debt from the proceeds of Bollingbrook Farm. As a consequence of the Court's ruling, neither Fahringer nor Rosen received full payment on the debts the Trustee now concedes are owed by Wilson.

The defendants have expressed their intention to appeal this Court's ruling on the application of the Travellers' lien; the stipulation presently before the Court settles all other matters at issue in this proceeding, making further trial in this Court unnecessary. After a thorough examination of the stipulation and the July 14, 1986 submissions on behalf of the debtor, approval of the stipulation is warranted.

Mr. Wilson's objections fall into two general categories. First, he asserts that the stipulation fails to correctly recite his fee agreements with attorneys Fahringer and Rosen. Second, Wilson contends that the services noted on the attorneys' billing statements were not actually performed. In reference to each objection, Wilson requests additional time to retrieve documents and other evidence in support of his position. In lieu of submitting contradictory evidence, Wilson disputes assertions made in the stipulation and, paragraph by paragraph, submits his version of events.

Under the stipulation of facts, Wilson retained Fahringer to handle criminal matters in Washington, Alexandria, Houston and New York and performed legal services amounting to $360,500.00 and incurred expenses in the amount of $52,507.00. The parties further stipulate that Fahringer received payments from Mr. Wilson totaling $158,944.00 and $100,724.00 from the sale of Bollingbrook Farm, for a total payment on account of $259,668.00. $153,339.00 remains due.

Wilson asserts that Fahringer agreed to a fee of $75,000.00 per case and an additional fee of $25,000.00 for appeal of an adverse result. Because Fahringer handled only the Virginia trial and appeal, one-half of the Houston case, and the preliminary paperwork in the Washington, D.C. case, Wilson claims that Fahringer has been paid in full. As a collateral matter, Wilson asserts that Fahringer's representation was less than exemplary: "[A]ccording to all counsel I have consulted [Fahringer and Rosen] missed the key elements of the cases and the appeals were to [sic] weak in logic to prevail."

Wilson alleges that he signed the encumbrances upon Bollingbrook Farm under something akin to duress or mistake:

Fahringer did not advise the cases would cost a million dollars. I had already decided to discharge him. I did sign a deed to Bollingbrook Farm. I relied on Fahringer because I was distressed at losing the Houston case and couldnt [sic] think. *He told me I was signing only a loan*

*agreement form,* to guarantee fees if New York cases and appeals were necessary ... Fahringer came to Otisville prison ... to get a $400,000 note signed and tore up the $150,000 [note]. The idea being since IRS had assessments against me no other attorney would take [the] case he would but wanted another note. He admitted it was not legal since IRS had moved on all property. Again this was represented as a note not a deed obligation.

Under the stipulation of facts, Wilson retained Rosen to assist first in the Houston case, and then in both the New York indictment and various appeals. Total fees accrued are stipulated in the amount of $386,098.00 and total expenses amounted to $90,677.00. Rosen received payments from the debtor totalling $58,944.00 and received $100,724.00 from the sale of Bollingbrook Farm, for a total payment on account of $159,668.00. $317,107.00 remains due.

Wilson claims that Rosen agreed to a $75,000.00 maximum for the Houston case, in which he contends she acted only as local counsel, and $25,000.00 for appeals. He also asserts that he paid Rosen $195,000.00 rather than the $58,944.00 to which the Trustee has stipulated. Wilson disputes the accuracy of Rosen's billings, claiming that her accountings show fees paid to witnesses who did not testify at trial, or to persons having no connection with the case.

■ Wilson has, to date, submitted no evidence to support his version of his fee arrangements with Fahringer or Rosen. The Trustee had every incentive to challenge the fees claimed to be due to both Fahringer and Rosen and to challenge the attorneys' encumbrance on Bollingbrook Farm, yet the Trustee has examined the billings and transactions and stipulated to the fees due. Counsel for Fahringer summarized the process by which the parties arrived at the stipulation:

And in the course of getting where we are, we have exchanged documents, exchanged a raft of information. And I believe the outcome of that investigation, particularly on Mr. Leach's part because

he's not entered this stipulation idly on speculation, the outcome has been the stipulation. And I think there's no doubt that he has done the proper investigation.... Mr. Leach has raised many of those questions [raised by Mr. Wilson] because they had been words that had been put in his ear by Mr. Wilson. We have satisfied him with the appropriate information, accounting of monies, and so forth.

Without additional documentary or other tangible evidence, there exists no reason to override the judgment of the Trustee that the fees charged by Fahringer and Rosen are legitimate.

In a letter to the Court, Wilson's present criminal counsel, Greta C. Van Susteren, outlined her investigation of the adequacy of Fahringer's legal representation of Wilson, which has led her to believe that Wilson holds a substantial malpractice claim against Fahringer, a claim which exceeds the amount of outstanding legal fees. Specifically, Van Susteren charges that Fahringer failed to properly subpoena a witness whose testimony would have compelled the District Court to grant Wilson's motion for judgment of acquittal. Because the witness did not arrive in time to testify at Wilson's trial, Van Susteren explains, Wilson was convicted. Local counsel for Fahringer told Van Susteren that he advised Fahringer more than two weeks prior to trial of the local rule requiring that a subpoena be filed two weeks prior to trial. Local counsel made the same statement to counsel for the Trustee.

In addition, Van Susteren describes a telephone call in which a Professor Northrop of Ohio State University related a conversation in which Thomas Clines told Northrop that Wilson was engaged in C.I.A. intelligence gathering in Libya. Evidently, Wilson was unable to prove his alleged C.I.A. connection at trial, but the import of this failure is not clear. Clines also told Northrop that Clines conveyed

this information to Fahringer prior to trial. Van Susteren concludes that it is inevitable that Mr. Wilson will be granted a new trial due to "ineffective assistance of counsel" due to Fahringer's failure to subpoena Mr. Clines. Furthermore, Van Susteren alludes to Wilson's "undoubted" ability to prevail in a civil suit for malpractice.

Counsel for the trustee represented at the hearing on this matter that he had been unsuccessful in his attempts to locate Professor Northrop through Ohio State University. It appeared to counsel that neither of the Ohio State professors named Northrop had placed the described call to Van Susteren.

Neither counsel nor Mr. Wilson has submitted further evidence regarding the allegedly ineffective assistance rendered by Fahringer. We are apprised that "no ... appellate reversal has occurred with respect to any of [Wilson's] criminal convictions and that the applicable statutes of limitation have expired without any malpractice complaints having been filed or initiated in any forum or before any appropriate body." Thus, the meager evidence suggesting that Fahringer engaged in an ineffective criminal representation remains unverified or has been undermined by the Trustee's attempts at verification. No proper action has been instituted on behalf of the debtor.

▬▬ Allegations, unsubstantiated after a reasonable period of time, even though contradictory to the trustee's opinion after thorough investigation, do not rise to the standard necessary to withhold approval of the stipulation before the Court. Furthermore, since the debtor is not a party to the stipulation, it cannot bind him in any subsequent action for malpractice, and is in fact irrelevant to the issues raised in a suit for malpractice save as an escalation of the damages allegedly due Wilson.[1] The stipulation has no bearing on any conceivable

---

1. We must draw the conclusion that the trustee has found no viable action for malpractice in view of his acquiescence to the fees billed by these defendants. Any action for malpractice would be property of Wilson's bankruptcy estate pursuant to section 541 of the Bankruptcy Code; the trustee is bound to pursue the action if it would result in a recovery of significant benefit to creditors.

action asserting the debtor's Sixth Amendment right to counsel.

In sum, neither Wilson nor Van Susteren has presented the Court with facts precluding approval of the Trustee's Stipulation of Facts and Documents. Particularly in view of the fact that no substantiated evidence is in the record to support the debtor's objections, approval of the stipulation is warranted.

An appropriate order will enter.